**SIGNED THIS: August 18, 2023**

_____
**Peter W. Henderson
United States Chief Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | |
| ANTHONY J. WALLACE, | Case No. 22-80765 |
| Debtor. | |
| ANTHONY J. WALLACE, | |
| Plaintiff, | |
| vs. | Adv. No. 23-8005 |
| INTERNAL REVENUE SERVICE, | |
| Defendant. | |

## OPINION

The Defendant, the United States of America, on behalf of the Internal Revenue Service, has moved the Court to abstain under 28 U.S.C. §1334(c)(1) from hearing this adversary complaint, in which the Debtor-Plaintiff seeks a determination that prior tax debts are dischargeable notwithstanding 11 U.S.C. §523(a)(1)(C). The IRS wishes instead to file a suit against the Debtor in the District Court to seek a collectible judgment. For the following reasons, the motion will be denied.

### I

The Debtor, Anthony J. Wallace, filed a Chapter 7 petition in December 2022. Four months later the Chapter 7 Trustee filed a report concluding that the estate did not contain any property available for distribution to creditors. Around the same time, the Debtor filed this adversary proceeding. The complaint is straightforward: the Debtor alleges he is indebted to the IRS for pre-petition income taxes for tax years 2012–2018, and he alleges that those debts are dischargeable notwithstanding 11 U.S.C. §523(a)(1), which excepts income tax debts from discharge in certain circumstances. The Debtor seeks a finding that the taxes are dischargeable and an order that the IRS not take any action to collect on the pre-petition income tax debts.

Though the Chapter 7 estate has been fully administered, the Debtor has not yet received a discharge. Though he has completed the financial management course required for a discharge under 11 U.S.C. §727(a)(11), he has not yet filed a certificate of completion. He has delayed filing the certificate under the belief that the entry of a discharge order would prompt the IRS to move to dismiss this adversary proceeding as moot. Instead, the IRS claims the issue is not ripe, as no discharge has been entered. It also suggests that the Court lacks authority to award the requested relief in light of the Declaratory Judgment Act, 28 U.S.C. §2201. Finally, it argues that the district court, not the bankruptcy court, is the better forum in which to litigate the dischargeability of the Debtor's tax debts. Given those potential problems, the IRS argues, the Court should abstain from hearing this case in favor of the IRS bringing its own suit in the district court under 26 U.S.C. §7402.

2

## II

Despite its perception of a "jurisdictional quagmire," the IRS does not move to dismiss for lack of jurisdiction. See Fed. R. Bankr. P. 7012(b), incorporating Fed. R. Civ. P. 12(b)(1). It instead raises the bogeyman of a jurisdictional reversal on appeal to try to persuade the Court to abstain. That approach is discouraged; if a party believes jurisdiction is lacking, it should move to dismiss. Still, the Court has the independent duty to assure itself of its subject-matter jurisdiction. *Mathis v. Metropolitan Life Ins. Co.*, 12 F.4th 658, 663 (7th Cir. 2021). The Court is confident that jurisdiction is present.

### A

The Debtor brought this adversary proceeding to determine the dischargeability of a debt for income taxes. 11 U.S.C. §523(a)(1). The district court has original but not exclusive jurisdiction of all civil proceedings arising under title 11, like this one. 28 U.S.C. §1334(b). The district court has referred all such cases to the bankruptcy judges in this district. Bankr. C.D. Ill. R. 4.1; see 28 U.S.C. §157(a). Bankruptcy judges have authority to hear "all core proceedings arising under title 11" including "determinations as to the dischargeability of particular debts." 28 U.S.C. §157(b)(2)(I). Subject-matter jurisdiction is secure. *Sprout v. Internal Revenue Service* (*In re Sprout*), No. 19-2113, 2020 WL 2527376, at **3–5 (Bankr. S.D. Ohio 2020).

### B

The IRS contends that the Court might lack authority to act under Article III because there is no live case or controversy (or at least there was not at the time the complaint was filed). It cites a number of non-bankruptcy decisions to explain, in general terms, that a matter must be "ripe" before a federal court may exercise jurisdiction. It then points to several bankruptcy decisions holding that a dischargeability action is not "ripe" without a "present or imminent threat of collection action by the government." E.g., *Hinton v. United States*, No. 09-621, 2011 WL 1838724 (N.D. Ill. May 12, 2011); *Mlincek v. United States*, 350 B.R. 764 (Bankr. N.D. Ohio 2006).

The case is ripe for adjudication under Article III. Mr. Wallace contends that certain debts owed to a creditor are dischargeable. That contention goes to the "core of the federal bankruptcy power" to restructure debtor-creditor relations. See *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982). It does not matter whether the creditor wishes to contest dischargeability, or indeed whether it participates at all. The debtor has standing under the Bankruptcy Code to seek discharge of his prior debts. See *Central Virginia Community College v. Katz*, 546 U.S. 356,

3

364 (2006). Outstanding debts, including for past taxes, pose a direct threat to a debtor's fresh start in bankruptcy. *In re Kilen*, 129 B.R. 538, 549 (Bankr. N.D. Ill. 1991); see *In re Landrie*, 303 B.R. 140, 142 (Bankr. N.D. Ohio 2003) ("[I]n a dischargeability proceeding such as this, the 'case or controversy' requirement will be met as long as there exists a 'debt' to discharge."). The existence of the debt and the imminent discharge[1] here is not speculative or hypothetical; the parties "are at odds about a legal issue with concrete consequences for them." *Union Pacific Railroad Co. v. Regional Transportation Authority*, No. 22-1445, 2023 WL 4755727, at *2 (7th Cir. Jul. 26, 2023).

A real and substantial controversy exists about the dischargeability of Mr. Wallace's tax debts. A final judgment will determine the rights of the Debtor under §§523(a)(1) and 727(b), statutes intended to provide the honest debtor with a fresh start. See *Matter of James Wilson Associates*, 965 F.2d 160, 168 (7th Cir. 1992) (defining "standing"). The Debtor's complaint was ripe as soon as he filed a petition seeking a discharge of prior debts under §727 as a person eligible for relief under Chapter 7. Article III is not offended. Cf. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).

## C

The IRS does not seem to contend otherwise. Its "ripeness" argument focuses not on jurisdiction but rather on what you might call "prudential ripeness." See *E.F. Transit, Inc. v. Cook*, 878 F.3d 606, 609 (7th Cir. 2018) ("Ripeness doctrine has both constitutional and prudential aspects."). A bankruptcy court that has authority to act under the Constitution should not always exercise that authority. *Local Loan Co. v. Hunt*, 292 U.S. 234, 241 (1934); *Mlincek*, 350 B.R. at 768 ("[P]ossessing authority and exercising it are separate considerations."). Whether a case is ripe as a prudential matter turns on (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). In other words: can the dispute fairly be resolved now, and is there reason to believe the dispute now affects the parties? See *E.F. Transit*, 878 F.3d at 610; Wright & Miller, 13B Fed. Prac. & Proc. Juris. §3532.1 (3d ed.) ("[C]ourts should not render decisions absent a genuine need to resolve a real dispute.").

There is no question the issue in this adversary proceeding is ripe. The IRS, notwithstanding its arguments, actually seems to agree. It intends to file a complaint under 26 U.S.C. §7402 to reduce the tax debts to a collectible judgment, having

---

[1] Mr. Wallace's fear that a discharge order will moot this adversary proceeding is unfounded. A live case or controversy will still exist between the parties as to whether the discharge order encompasses his pre-petition tax debts.

4

determined that they are nondischargeable. Even it disclaims extending the principle from the main cases it cites—that a §523(a)(1)(C) determination is not ripe until the IRS has "made up its mind regarding non-dischargeability"—to cases (like this one) in which the IRS *has* in fact made up its mind.[2] So while there may be instances in which the Court might determine that a debtor-initiated §523(a)(1) adversary complaint is not yet ripe as a prudential matter, that is not this case.[3] The parties have a dispute affecting their rights, capable of adjudication, that needs to be resolved now. The case is ripe.[4]

### III

Even when a Chapter 7 bankruptcy proceeding involves a justiciable controversy, nothing in Title 11 prevents a district court (or bankruptcy court, by reference) from abstaining from hearing that proceeding "in the interest of justice." 11 U.S.C. §1334(c)(1). The IRS argues that the interest of justice favors abstention because (1) the case might not be ripe, (2) the Court might not have authority to enter judgment due to the Declaratory Judgment Act, and (3) it would be a waste of resources to litigate

---

[2] The IRS is "skeptical" of the result in *Cosmano v. United States*, No. 21-59 (Bankr. N.D. Ill. Dec. 12, 2022). The Court agrees that skepticism is warranted. There, the bankruptcy court held that a debtor lacks standing to seek a determination of the dischargeability of his pre-petition tax debts "without some action from the United States to collect the debt or some threat to do so imminently." This Court cannot reconcile that holding with one of the fundamental purposes of bankruptcy, which is to determine the extent of a debtor's discharge. See *In re Dambowsky*, 526 B.R. 590, 603 (Bankr. M.D.N.C. 2015). Debtors *always* have standing to seek a discharge.

[3] There is a persuasive argument to be made that a debtor is always entitled to seek a determination of the dischargeability of his tax debts, even if the IRS has not made up its mind whether to contest their dischargeability. See *Wiswall v. Campbell*, 93 U.S. 347, 350 (1876) ("Prompt action is everywhere required by law."). A Chapter 7 bankruptcy allows the debtor to get a "fresh start" by discharging his debts. *Bartenwerfer v. Buckley*, 143 S. Ct. 665, 670 (2023). The Court wonders how refreshing it is to have potential tax liability lingering over one's shoulder for an indefinite period of time. But that is not this case, so the Court need not decide whether the doctrine of prudential ripeness might favor abstention in a case where the IRS has not yet decided whether §523(a)(1) applies.

[4] The IRS mentions that a case must be "ripe" from its inception. That statement conflates jurisdictional concerns (standing, mootness, Article III ripeness) with prudential concerns. See *Norfolk Southern Ry. Co. v. Guthrie*, 233 F.3d 532, 534–35 (7th Cir. 2000) (discussing in context of Article III ripeness). The Court is unaware of any case holding that a court may not adjudicate an actually ripe dispute, over which it has always had jurisdiction, because it may not have been prudent to hear it at the time the complaint was filed. Such a rule would contradict the normal federal practice of staying a case to permit an important future event to occur. E.g., *Rhines v. Weber*, 544 U.S. 269, 278 (2005); see *Hartford Cas. Ins. Co. v. Borg-Warner Corp.*, 913 F.2d 419, 427 (7th Cir. 1990).

the §523(a)(1) issue in this Court, rather than the district court. Those arguments, both in isolation and as a whole, are unpersuasive.

Abstention under §1334(c)(1) is "informed by principles developed under the judicial abstention doctrines, and courts have usually looked to these well-developed notions of judicial abstention when applying section 1334(c)(1)." *Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993). The Seventh Circuit has suggested that bankruptcy courts apply twelve factors flexibly according to their relevance and importance under the particular circumstances of each case. *Id*. The factors include:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention,
(2) the extent to which state law issues predominate over bankruptcy issues,
(3) the difficulty or unsettled nature of the applicable law,
(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court,
(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334,
(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,
(7) the substance rather than form of an asserted "core" proceeding,
(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court,
(9) the burden of [the bankruptcy court's] docket,
(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties,
(11) the existence of a right to a jury trial, and
(12) the presence in the proceeding of nondebtor parties.

*Id*. On the other hand, the Seventh Circuit has also suggested that a twelve-factor list does not actually constrain a judge's discretion in any meaningful way. See generally *Exacto Spring Corp. v. C.I.R.*, 196 F.3d 833, 834–35 (7th Cir. 1999) (criticizing multi-factor tests). This Court doubts the factors' efficacy as a legal test for what the "interest of justice" requires, because they can justify nearly any outcome a bankruptcy judge desires. See *Matter of Plunkett*, 82 F.3d 738, 741 (7th Cir. 1996) (criticizing laundry list attempting to define "when justice so requires"). The Court has considered each of the

twelve factors in deciding whether abstention would be in the interest of justice[5], but a more appropriate inquiry focuses on the particular reasons the parties in this case believe abstention would or would not be in the interest of justice. See *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).

### A

The first concern raised by the IRS is that the case might not be ripe. It is, for the reasons given above. And the IRS seems to agree. But it stirs up uncertainty about the matter to try to convince the Court to abstain, suggesting in part that a later court might disagree. This case though presents a quintessentially ripe issue. The parties disagree on a legal issue with concrete consequences for them. The Court is confident in its jurisdiction. Given the "virtually unflagging" obligation of a federal court to hear and decide matters within its jurisdiction, the Court does not believe it would be prudent to abstain based on ripeness concerns. See *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014).

Prudential ripeness does not have much to do with permissive abstention here, anyway. The former doctrine asks, "Should this court act at this particular time?" while the latter asks, "Should this particular court act at this time?" The essence of the IRS's motion is not that the timing is off—it intends to immediately raise the same dispute under 26 U.S.C. §7402—but that the matter should be heard in a different court. So the IRS's arguments on prudential ripeness are unavailing.

### B

The IRS then sows doubt about the availability of relief in this Court in light of the Declaratory Judgment Act, 28 U.S.C. §2201. Again, the IRS has not moved to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Bankr. P. 7012(b), incorporating Fed. R. Civ. P. 12(b)(6). Regardless, the IRS's position on the merits is foreclosed by appellate precedent, which this Court must follow, so there is no uncertainty that would justify abstention.

*McKenzie v. United States*, 536 F.2d 726 (7th Cir. 1976), has two relevant holdings. First, a provision of the Bankruptcy Act that permitted the debtor to file an application for the determination of the dischargeability of any debt waived the sovereign immunity of the United States in any bankruptcy action in which the United States was

---

[5] Factors 1, 2, 4, 5, and 8 are irrelevant or neutral. Factors 3 and 12 support abstention. Factors 6, 7, 9, 10, and 11 do not support abstention.

alleged to be a creditor of the bankrupt, including instances in which federal taxes had become due and owing. Second, a debtor seeking a determination of the dischargeability of his tax indebtedness under the Act was *not* requesting a declaratory judgment with respect to Federal taxes in the sense that §2201 did not authorize. 536 F.2d at 729.

True, that was the Bankruptcy Act, not the modern Bankruptcy Code. But the Seventh Circuit has held that the Code waives sovereign immunity as well. *Matter of Neavear*, 674 F.2d 1201, 1204 (7th Cir. 1982). The applicable section when the Code was first enacted "preserve[d] the rule, … approved by this court in *McKenzie*, that a debtor may seek a declaration from the bankruptcy court that a debt owed to an agency of the United States is dischargeable." *Id*. The current edition of the Code puts it in black and white: "[S]overeign immunity is abrogated as to a governmental unit … with respect to … sections … 505 … [and] 523 … ." 11 U.S.C. §106(a)(1); see *Bush v. United States*, 939 F.3d 839, 844 (7th Cir. 2019). The IRS suggests some reasons why §106(a)(1) does not mean what it says, but this Court is constrained by the Seventh Circuit's explicit holding that sovereign immunity is waived when a debtor seeks a determination of dischargeability. There is no reason to think that the abrogation of sovereign immunity in §106(a)(1) with respect to §§505 and 523 is meant to apply piecemeal to only some *types* of determinations under those sections rather than categorically to *any* determination. Cf. *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 143 S. Ct. 1689, 1697 (2023).

What about the Declaratory Judgment Act? *McKenzie* holds that a determination of dischargeability is not a declaratory judgment for the purposes of §2201. That resolves the matter; nothing in the enactment of the Bankruptcy Code or amendments to §2201 calls that characterization of dischargeability determinations into question. Indeed, the legislative history behind the enactment of §505 of the Bankruptcy Code leaves no doubt that Congress meant to preserve the ability of a debtor to seek a determination as to the dischargeability of his tax debts:

> Under the House amendment, as under present law, an individual debtor can also file a complaint to determine dischargeability. Consequently, where the tax authority does not file a claim or a request that the bankruptcy court determine dischargeability of a specific tax liability, the debtor could file such a request on his own behalf, so that the bankruptcy court would then determine both the validity of the claim against assets in the estate and also the personal liability of the debtor for any nondischargeable tax.

8

124 Cong. Rec. 32,413 (Sept. 28, 1978) (House); 124 Cong. Rec. 34,013 (Oct. 5, 1978) (Senate).

The Seventh Circuit was right in *McKenzie*, by the way. A determination of the scope of a debtor's discharge is one of the two primary purposes of bankruptcy law. *Wiswall*, 93 U.S. at 350. A debtor who seeks a dischargeability determination is not seeking a declaration about his rights "whether or not further relief is or could be sought." 28 U.S.C. §2201. He is seeking substantive relief, provided by the Bankruptcy Code, to adjust the relationship he has with his creditors. So a determination of dischargeability is not a declaratory judgment under §2201, even if it might be analogized to such an action. The Seventh Circuit could not "believe that Congress gave the bankruptcy court [authority] to determine the dischargeability of tax debts … and then intended that the determination should be prohibited by the Declaratory Judgment Act." *McKenzie*, 536 F.2d at 729. This Court does not believe it either.

*McKenzie*'s sound holding establishes that the Court has authority to determine the dischargeability of Mr. Wallace's tax debts, because they are not subject to §2201's limitations. The parties' extended discussion of the relationship between §505 and §2201 is therefore irrelevant. The Court is confident it has authority to perform one of its two essential functions in determining the scope of Mr. Wallace's discharge. The Declaratory Judgment Act provides no reason to abstain.

### C

The IRS urges the Court to abstain because of what it calls "several reasons to doubt the Court's ability to exercise jurisdiction over Mr. Wallace's adversary complaint." But subject-matter jurisdiction is secure. 28 U.S.C. §§1334, 157. To illustrate what it means, the IRS cites *United States v. Bond*, 762 F.3d 255 (2d Cir. 2014), in which the court of appeals vacated the work of the lower courts due to its view that the bankruptcy court did not have jurisdiction under §505. That is not the law in the Seventh Circuit, though. Neither §505 nor §523 is a jurisdictional statute. *Bush*, 939 F.3d at 842–43. Nor is §2201, to the extent it is relevant. *NewPage Wisconsin System Inc. v. United Steel Workers Int'l Union*, 651 F.3d 775, 776 (7th Cir. 2011). And sovereign immunity is not a jurisdictional concern. *Bush*, 939 F.3d at 844. The two primary arguments raised by the IRS in favor of abstention—prudential ripeness and the Declaratory Judgment Act—are not jurisdictional. There is no doubt this Court has subject-matter jurisdiction under title 28; whether it has (and should exercise) the authority to enter a judgment resolving the §523(a)(1) dispute is a matter that should be litigated in the ordinary course. The Court rejects the premise that it should abstain

9

from deciding a core bankruptcy matter because a judgment that it has jurisdiction to enter might be reversed on appeal.

The IRS also argues that the Court is not uniquely situated to adjudicate whether the Debtor filed a fraudulent return or willfully attempted to evade taxes. It proffers that district courts hear tax evasion matters more frequently. The Court does not doubt that the district court would do a fine job handling the dispute in this case. But determining whether a debtor's tax debts are nondischargeable is a familiar inquiry to this Court as well. And while district judges are generalists, *Capps v. Drake*, 894 F.3d 802, 805 (7th Cir. 2018), bankruptcy judges specialize in issues such as dischargeability. It does not promote the interest of justice to transfer core bankruptcy matters, like the action here, from a specialized bankruptcy forum to a general district court docket. (The IRS's related contention that the district court is better equipped to conduct a jury trial is also a nonstarter. There is no right to a jury trial in a dischargeability proceeding. *Matter of Hallahan*, 936 F.2d 1496, 1505 (7th Cir. 1991).)

**D**

The final point the IRS makes is that consolidating its collection action with a determination of dischargeability in one forum—the district court—is sensible. The Court agrees in part. Had the IRS initiated a lawsuit in the district court under 26 U.S.C. §7402 before Mr. Wallace filed his dischargeability complaint, the shoe would be on the other foot. See *United States v. Mikhov*, 645 B.R. 609, 618 (S.D. Ind. 2022). When a party tries to force its way into a court to be heard on an issue that was already pending in a different venue, one cannot help but think that forum shopping is involved. Here, though, the IRS has not filed any action against Mr. Wallace, and the Court will not abstain in the hope that the IRS will bring the issue to the district court's attention. The dispute is ready for decision as pleaded by Mr. Wallace.

Besides, the judicial efficiency argument is a bit overblown. If the Court decides that the tax debts are dischargeable, the IRS is not likely to seek to collect them. See 11 U.S.C. §524(a). On the other hand, if the Court decides that they are nondischargeable, any collection action promises to be perfunctory in light of Mr. Wallace's concession that he owes the debts. There may be extra costs in the form of an additional layer of appellate review, but that is the bankruptcy system established by Congress and adopted by the Central District of Illinois. 28 U.S.C. §157(a); Bankr. C.D. Ill. R. 4.1.

## IV

Abstention from the exercise of jurisdiction is the exception rather than the rule. *Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 6 F.3d at 1189. None of the reasons supplied by the IRS, individually or cumulatively, persuades the Court that this case is exceptional. It is not in the interest of justice to refuse to hear this core bankruptcy matter. The motion to abstain will therefore be denied.

# # #